## IN PROBATE.—MARCH, 1855.

## IN THE MATTER OF THE PROOF OF THE WILL OF FREDERIC JAMES PORTER.

The document presented as a will had been made under peculiar circumstances, and its execution was not attested by any witnesses.  Not admitted to probate.

Letters of administration granted to a party here, holding a power of attorney from the intestate's brother residing in England.

Power of attorney admitted to be read, its execution purporting to have been sworn to, by the subscribing witnesses, before the Lord Mayor of York, England, who certified the same officially.  (See Ewing *et al. vs.* Janion.)

JUDGE ROBERTSON, in delivering his decision, said as follows:

The hearing of this matter was had at chambers, on the 21st inst., upon the petition of William Miller, Esq , H B. M.'s Consul General, for probate of the last will and testament of Frederic J. Porter; or that if the will presented should not be admitted to probate, an administrator might be appointed upon the estate of the deceased.

The document offered for probate as the will of Mr. Porter is in the following words, viz:

August 10th, 1854.

" I Frederick James Porter do hereby will and bequeath unto my youngest brother, Septimus Francis Porter, of York, in the county of Yorkshire, Great Britain, the *whole* of my property after my funeral· expenses and just debts are paid, for his especial use and benefit. I further call upon W. Miller, British Consul General, to take such steps as may insure such a disposal of the same. Witness my signature. F. J. PORTER."

This paper was found in the private writing desk of Mr. Porter, on the day of his death, the desk being at the time unlocked.

Mr. Frederic Ogden, with whom Mr. Porter was a partner in business up to the time he committed suicide on the 11th August last, appears by counsel, and opposes the application for probate of the document presented as the will of the deceased, on the ground that it is not properly authenticated by subscribing witnesses, and further that the deceased was insane when he executed the same. He also opposes the application for letters of administration to be granted to Mr. Robert Clouston, who claims to represent Septimus Francis Porter, under power of attorney, on the ground that the applicant is not a relative or a creditor of the deceased; that the power of attorney

presented to the court has not been executed in the manner required by law, and that Mr. Ogden, as the surviving partner of the firm of Porter & Ogden, has the exclusive right to settle the partnership affairs, and is the only person, here, properly authorized to take out letters of administration on the estate of his deceased partner.

The first question to be determined is, whether or not the document presented shall be admitted to probate, as and for the last will and testament of Frederic J. Porter.

The counsel for Mr. Ogden objects to this on the ground that it was not executed in the presence of witnesses, which he contends is necessary by express provision in the laws of Great Britain, of which country the deceased was a subject, and, by implication, according to the laws of this kingdom. In settling this point, the court must be governed entirely by the laws of this country, if there are any on the subject, and the established practice of this court. There is in this kingdom no statute similar to those of England and the States of the American Union, to which reference has been made, prescribing the manner in which a will must be executed and attested, in order to its validity. But it would seem that the legislature perhaps contemplated that every will should be attested by one or more witnesses, for Sec. 3d, at page 55 of the second volume of the Statute Laws makes express provision for the citation of such witnesses whenever a will is to be presented for proof.

I am not aware that this court has in any instance, heretofore, admitted to be proven as a will any document the execution of which was not attested by at least one subscribing witness; and where wills have been proved by but one subscribing witness, the court has frequently, particularly in contested cases, required the additional testimony of others who saw the testator sign the instrument, but did not subscribe their names as witnesses at the time. I am not inclined, in the absence of statutory provision on the subject, to increase the stringency of the practice which has hitherto prevailed; but, at the same time, I feel that to admit to probate the informal document now before me, as a valid last will and testament, upon the evidence merely of one witness testifying to his opinion of the handwriting, unless shown to have been made under circumstances where witnesses could not be procured, would be to set up a dangerous precedent, to encourage fraud, and to disregard the wisdom and experience which have, in other countries, prompted the legislative power to guard and regulate so important a subject by express enactments. In ruling thus in the present case, I do not say but that, under a different state of facts, I would sustain a holograph will, although not attested by a single subscribing witness.

Having decided, then, that the document presented cannot be admitted to probate, on the grounds before specified, it becomes unnecessary for me to touch upon the objection made to it on the score of the alleged insanity of the deceased, and I will now proceed to consider the application for letters of administration upon his estate.

Consul General Miller, who made the application to the court on the 16th of February, requests by his letter of the 20th inst., that in case letters of administration are issued, they may be granted to Mr. Robert Clouston, to whom, as stated by the Consul General, Mr.

v

Septimus Francis Porter, has forwarded a power of attorney, fully authorizing Mr. Clouston to act for him in this matter.

The counsel for the petitioner contends, I think with much propriety, that although the document offered for probate may not be sufficiently formal in its execution to warrant the court in upholding it as a good and valid will, yet it is indicative of the *animus testandi* of the deceased to such an extent as ought, in some measure, to guide the court in granting the letters of administration. I have no doubt that if Septimus Francis Porter had come to this country in person, and applied for probate of his brother's will, and that had been refused, either of the judges having jurisdiction would have granted letters of administration to him, in preference to other applicants, under the circumstances.

On allowing the power of attorney to be read at the hearing, I reserved the objection to it raised by Mr. Ogden's counsel, that the same has not been executed in the manner required by law. The document is a special power of attorney, drawn up in the form usual in England, purporting to have been duly executed by Septimus F. Porter, in the presence of Shepley Watson, Solicitor in York, and Alfred Guy, Attorney's Clerk there. It also bears an affidavit by Shepley Watson, to the effect that he and the other subscribing witness saw Mr. Porter execute the instrument, which affidavit appears to have been sworn to before the Right Honorable George Wilson, Lord Mayor of York, who has authenticated the same under his official signature and seal. The learned counsel referred in his argument, to the decision of CHIEF JUSTICE LEE on this subject, in the case of A. Orr Ewing *et al. vs.* Robert C. Janion, and although the mode in which the execution of the power of attorney now before me is authenticated, is not quite so satisfactory as that of the one presented in the cause referred to, yet, in view of the decision appealed to, in the reasoning of which I fully concur, I would not feel myself justified in refusing to receive as genuine the one offered in this instance.

In the case of A. Orr Ewing *et al. vs.* Robert C. Janion, CHIEF JUSTICE LEE said : "We are aware that the general rule on this subject, as it prevails in England and the United States, supports the doctrine contended for, but that rule has not been adopted here, to its full extent, and in the present position of affairs at these islands, we do not feel justified in so adopting it." The learned CHIEF JUSTICE said further, "And we feel inclined to say, that so long as we have no commissioners in other countries to take the acknowledgment of deeds, powers of attorney, &c., an acknowledgment made before the Lord Provost and Chief Magistrate of Glasgow, or the Mayor or Chief Magistrate of any large city in Great Britain, France, or the United States, or a notary public, and duly authenticated under his hand and official seal, will be sufficient evidence of the execution of such deed or power of attorney here. Such a ruling would seem to be almost necessary in these remote islands to the safety of commercial transactions."

Being fully satisfied that Mr. Clouston is the duly authorized attorney of Septimus Francis Porter, to whom, were he personally present and desirous of acting as administrator on his brother's estate, I would feel myself bound to grant letters of administration, in preference to any other applicant; and as so much time has already elapsed since

the death of Frederic James Porter, I feel impelled by a sense of duty towards his heirs, as I also feel perfectly justified in the deliberate exercise of the discretion vested in this court, to grant the letters of administration, as prayed for, to Mr. Robert Clouston.

Mr. Ogden's counsel contends that he, as the surviving partner of the firm of Porter & Ogden, and a creditor of the deceased, is the only person in this kingdom properly entitled to letters of administration. I am unable to perceive the force of this argument, for, in practice, the appointment of parties other than the survivor, to administer on the estate of a deceased partner, is a thing of every day occurrence, notwithstanding that, as is argued by the learned counsel, the surviving partner has the exclusive right to wind up the partnership affairs. As to Mr. Ogden being a creditor of the estate of the deceased, there is no evidence before the court of that fact, and even if there were I do not think it ought to influence my decision in the present case.

Letters of Administration are granted to Mr. Robert Clouston, on his filing the customary bond required by law, in the penal sum of $10,000.

Mr. Montgomery, Solicitor for the Petitioner.

Mr. Blair, Solicitor for Mr. Ogden.